**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 18, 2017**

# In the Court of Appeals of Georgia

A17A0428. PALMER v. THE STATE.

A17A0429. ELLERBEE v. THE STATE.

DILLARD, Presiding Judge.

Royce Palmer and Brandon Ellerbee appeal from the trial court's denial of their pleas in bar. Following that denial, both appellants were convicted, in a stipulated bench trial in Calhoun County, of theft by taking and criminal trespass and sentenced under the First Offender Act. Palmer and Ellerbee argue that the trial court erred in denying their pleas in bar when their prosecutions in Calhoun County were barred by double jeopardy because both had entered into a pretrial diversion program in Irwin County with regard to the same criminal conduct at issue in Calhoun County. For the reasons set forth *infra*, we affirm Palmer and Ellerbee's convictions.

The standard of review of a "grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the trial court's findings support its conclusion."[1] But when the evidence is uncontroverted and witness credibility is not an issue, "our review of the trial court's application of the law to the undisputed facts is de novo."[2] Here, as stipulated to or testified to by both Palmer and Ellerbee at their Calhoun County plea-in-bar hearing and the subsequent bench trial, the record shows that on October 17, 2013, the appellants went to a farm in Calhoun County for the purpose of committing a theft. Thereafter, Palmer and Ellerbee took from the farm a trailer loaded with pecans, the combined value of the items being $28,240.00. The men then drove the trailer to Irwin County, where they unloaded the pecans for sale to a pecan company and then disposed of the trailer by pushing it into the Alapaha River. They were subsequently arrested in Irwin County and charged with two counts of theft by receiving stolen

---

[1] *Johns v. State*, 319 Ga. App. 718, 719 (738 SE2d 304) (2013) (punctuation omitted); *accord Nicely v. State*, 305 Ga. App. 387, 389 (1) (699 SE2d 774) (2010).

[2] *State v. Hill*, 333 Ga. App. 785, 785 (777 SE2d 265) (2015) (punctuation omitted).

property.[3] The pair was later arrested in Calhoun County and charged with theft by taking and criminal trespass.[4]

On February 4, 2013, a grand jury in Calhoun County returned an indictment against Palmer and Ellerbee on counts of theft by taking and criminal trespass. Twenty-four days later, on February 28, 2013, Palmer and Ellerbee entered into a pretrial intervention program in Irwin County concerning their arrests for theft by receiving. It is undisputed that no indictment or accusation was ever filed in Irwin County, but the terms of the pretrial intervention agreement required two years of compliance with program and payment of a $1,000 fine. Upon successful completion of the Irwin County program, the pending warrants against Ellerbee and Palmer

---

[3] *See* OCGA § 16-8-7 (a) ("A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. 'Receiving' means acquiring possession or control or lending on the security of the property.").

[4] *See* OCGA § 16-8-2 ("A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."); OCGA § 16-7-21 (b) ("A person commits the offense of criminal trespass when he or she knowingly and without authority[ ] . . . [e]nters upon the land or premises of another person or into any part of any vehicle, railroad car, aircraft, or watercraft of another person for an unlawful purpose[.]").

would be dismissed. Both Ellerbee and Palmer paid the fine and began reporting to Irwin County authorities in compliance with the terms of the agreement.

Meanwhile, as to the indicted charges in Calhoun County, in early March 2013, appellants waived arraignment. And on December 2, 2013, they waived their right to a jury trial. Finally, on March 3, 2014, Ellerbee and Palmer each filed a plea in bar as to the charges in Calhoun County. On that same day, they appeared in Calhoun County Superior Court for a hearing on their pleas in bar and, following the court's denial of same, a consolidated, stipulated bench trial on the charges for theft by taking and criminal trespass.

When the Calhoun County hearing occurred, Ellerbee and Palmer had already paid the $1,000 fine and successfully completed one year of the two-year pretrial intervention program in Irwin County. Thus, they argued that their prosecution in Calhoun County on charges stemming from the same criminal conduct was barred by double jeopardy. But the trial court disagreed, and went on to convict both men of the Calhoun County charges following the stipulated bench trial. This consolidated appeal by Ellerbee and Palmer follows, in which both challenge the denial of their pleas in bar.

4

We begin our analysis by noting that the prohibition against double jeopardy in both the United States Constitution[5] and the Georgia Constitution[6] protects our citizens from, *inter alia*, being prosecuted a second time for the same offense after an acquittal or conviction.[7] As our Supreme Court has previously explained, the bar to multiple convictions "usually arises [when] several crimes arising out of one criminal transaction are tried at the same time" and, in such cases, "the rule does not operate

---

[5] *See* U.S. CONST. amend. V (". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); *see also Brown v. Ohio*, 432 U.S. 161, 165 (II) (97 SCt 2221, 53 LE2d 187) (1977) ("Because it was designed originally to embody the protection of the common-law pleas of former jeopardy, the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." (citation and footnote omitted)).

[6] *See* GA. CONST. Art. 1, § 1, ¶ XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of a mistrial.").

[7] *See Phillips v. State*, 298 Ga. App. 520, 521 (1) (680 SE2d 424) (2009) ("The prohibition against double jeopardy in both the United States and Georgia Constitutions, among other things, protects against a second prosecution for the same offense after acquittal or conviction."); *Roberts v. State*, 280 Ga. App. 672, 673 (634 SE2d 790) (2006) ("The prohibition against double jeopardy found in both the United States Constitution and Georgia Constitution protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." (punctuation omitted)).

5

until after the verdicts."[8] But the bar to multiple convictions may "have a procedural aspect [when] the crimes arising out of the same criminal transaction are tried separately."[9] And when crimes are tried separately, "it is generally held that if multiple convictions arising out of a single prosecution are barred they will likewise be barred from successive prosecution."[10] Thus, when crimes are to be prosecuted separately, "the more serious known crimes should be prosecuted first to avoid the conviction of a lesser crime barring a subsequent prosecution for a more serious crime."[11]

In this regard, several Georgia statutory provisions, including OCGA § 16-1-7 and OCGA § 16-1-8, "provide limitations on multiple prosecutions, convictions, and punishments for the same criminal conduct."[12] Accordingly, because Georgia law "expands the proscription of double jeopardy beyond that provided for in the United States and Georgia Constitutions," we look to these statutory provisions to resolve

---

[8] *Keener v. State*, 238 Ga. 7, 8 (230 SE2d 846) (1976).

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Phillips*, 298 Ga. App. at 521 (1) (punctuation omitted); *see* OCGA § 16-1-6; OCGA § 16-1-7; OCGA § 16-1-8.

issues of double jeopardy.[13] Finally, we note that when a "defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences[,]'"[14] and he may be prosecuted by each sovereign "without violating the constitutional protection against double jeopardy."[15] That said, the various counties within Georgia are *not* separate sovereigns.[16]

---

[13] *Phillips*, 298 Ga. App. at 521 (1) (punctuation omitted); *see Prater v. State*, 273 Ga. 477, 480 (4) (545 SE2d 864) (2001) ("Because the Georgia Code extends the Double Jeopardy proscription beyond that provided for in the United States and Georgia Constitutions, all questions of Double Jeopardy in Georgia must be determined under OCGA §§ 16-1-6, 16-1-8 and 16-1-7." (footnote and punctuation omitted)).

[14] *Jackson v. State*, 284 Ga. 826, 828 (4) (672 SE2d 640) (2009) (punctuation omitted).

[15] *Id.*

[16] *See Perkinson v. State*, 273 Ga. 491, 494 (1) (542 SE2d 92) (2001) ("It is also clear that Bartow and DeKalb counties are not separate sovereigns. Although more than one county and prosecutor are involved, all the criminal charges against [the defendant] were brought on behalf of the State of Georgia." (citations omitted)); *see also Jackson*, 294 Ga. at 828 (4) (noting that *Perkinson v. State* "involved improper successive prosecutions for the same conduct in two Georgia counties, which are not separate sovereigns"). As an aside, we note that Calhoun and Irwin Counties are not in the same judicial circuit. *See* OCGA § 15-6-1 (35), (39) ("The entire state is divided into judicial circuits, in reference to the jurisdiction and sessions of the superior courts, as follows[ ] . . . South Georgia Judicial Circuit, composed of the Counties of Baker, Calhoun, Decatur, Grady, and Mitchell . . . [and] Tifton Judicial Circuit, composed of the Counties of Tift, Irwin, Worth, and Turner[.]").

Turning to the statutes relevant to this appeal, we are mindful that in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[17] And toward that end, we must afford the statutory text its plain and ordinary meaning,[18] consider the text contextually,[19] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[20] and seek to "avoid a construction

---

[17] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation and citation omitted); *see also Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012) (same); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013) (same).

[18] *See Deal*, 294 Ga. at 172 (1) (a) ("To that end, we must afford the statutory text its plain and ordinary meaning." (punctuation and citation omitted)); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . .").

[19] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___U.S. ___ (II) (B) (133 SCt 2247, 2254, 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("The common and customary usages of the words are important, but so is their context." (punctuation omitted)).

[20] *Deal*, 294 Ga. at 172-73 (1) (a); *see Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013) (same).

that makes some language mere surplusage."[21] In summary, when the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[22]

Bearing these principles of statutory construction in mind, OCGA § 16-1-7 provides, in relevant part, that

> [w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if[ ] . . . [o]ne crime is included in the other; or . . . [t]he crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.[23]

And OCGA § 16-1-8 provides, in relevant part, that

> [a] prosecution is barred if the accused was formerly prosecuted for the same crime based upon the same material facts, if such former

---

[21] *In the Interest of L.T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation omitted); *see also Ga. Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011) (same).

[22] *Holcomb v. Long*, 329 Ga. App. 515, 518 (1) (765 SE2d 687) (2014) (punctuation omitted); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[23] OCGA § 16-1-7 (a) (1)-(2).

9

prosecution[ ] . . . [r]esulted in either a conviction or an acquittal; or . . . [w]as terminated improperly after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts or after a plea of guilty was accepted by the court.[24]

"Prosecution" is defined elsewhere in the Code as "all legal proceedings by which a person's liability for a crime is determined, commencing with the return of the indictment or the filing of the accusation, and including the final disposition of the case upon appeal."[25]

After having considered these statutory provisions, the trial court denied Ellerbee and Palmer's pleas in bar because (as the State again argues on appeal) there was no prosecution in Irwin County. Indeed, it is undisputed that there had been neither an indictment returned nor an accusation filed there for either appellant.

We agree with the trial court that, after applying the undisputed facts in this case to the plain language of the relevant statutes (quoted *supra*), it is clear that

---

[24] OCGA § 16-1-8 (a) (1)-(2).

[25] OCGA § 16-1-3 (14); *see also Armstrong v. State*, 281 Ga. App. 297, 298 (635 SE2d 880) (2006) ("A defendant is not placed in jeopardy until, in a court of competent jurisdiction with a sufficient indictment, he has been arraigned, has pled, and a jury has been impaneled and sworn." (punctuation omitted)); *Fletcher v. State*, 213 Ga. App. 401, 404 (2) (445 SE2d 279) (1994) (same).

Ellerbee and Palmer's prosecution in Calhoun County was not barred by their decision to enter into a pretrial intervention program (a type of program expressly authorized by our General Assembly[26]) *in lieu of prosecution* in Irwin County (a purpose which is recognized by the very statute that authorizes such programs[27]). And while there might arguably be some tension between the incentive to enter into and complete a pretrial diversion program (which the appellants had not yet done at the time of their pleas in bar) and the principles that are applicable to double jeopardy,[28]

[26] *See* OCGA § 15-18-80 (a) ("The prosecuting attorneys for each judicial circuit of this state shall be authorized to create and administer a Pretrial Intervention and Diversion Program. The prosecuting attorney for state courts, probate courts, magistrate courts, municipal courts, and any other court that hears cases involving a violation of the criminal laws of this state or ordinance violations shall also be authorized to create and administer a Pretrial Intervention and Diversion Program for offenses within the jurisdiction of such courts."). We note that OCGA § 15-18-80 (a) was slightly amended, effective July 1, 2016, so as to further provide that "[u]pon the request of the district attorney or solicitor and with the advice and express written consent of such attorney, the state or local governing authority may enter into a written contract with any entity or individual for the purpose of monitoring program participants' compliance with a Pretrial Intervention and Diversion Program." *See* Ga. L. 2016, Act 460, §§ 1-9, 14-1 (a). However, in all other respects, OCGA § 15-18-80 (a) remains the same as that which applied in 2013.

[27] *See* OCGA § 15-18-80 (b) ("It shall be the purpose of such a program to provide *an alternative to prosecuting offenders* in the criminal justice system." (emphasis supplied)).

[28] *Cf. Commonwealth v. McSorley*, 485 A2d 15, 19 (Pa. Super Ct. 1984) ("In placing a defendant into a diversion program, the state covenants to dismiss the

11

we need not address or attempt to resolve any such tension at this time. Once again, under the relevant facts and law applicable to this case, because Palmer and Ellerbee were not actually *prosecuted* in Irwin County, jeopardy did not attach.[29]

---

charges once the defendant satisfies the conditions of the program. Unless the defendant violates one of those conditions, the state cannot prosecute him. Just as the terms of a plea bargaining arrangement are binding on the state, so must the terms of a diversion agreement bind the state. To hold otherwise, would create a disincentive for defendants to enter diversion programs." (citation omitted)); *State v. Urvan*, 446 NE2d 1161, 1166-67 (IV) (Ohio App. 1982) (holding that defendant's successful completion of pretrial intervention program in one county, and the entry of a nolle prosequi as to the relevant charges in that county, barred subsequent prosecution in a separate county for charges arising out of the same conduct). *But see Evans v. State*, 293 Ga. App. 371, 373 (1) (667 SE2d 183) (2008) ("While a plea bargain is a binding contract between the State and the defendant, we have not analyzed pre-trial intervention programs under contract law." (citation omitted)); *Buice v. State*, 239 Ga. App. 52, 53 (1) (520 SE2d 258) (1999) ("The entry of nolle prosequi does not act as an acquittal or bar future prosecution for the same offense. Thus, an order of nolle prosequi is not necessarily the ending of the prosecution, but the continuance of the same as the State clearly has the authority to re-indict the defendant for the same offense." (citation and punctuation omitted)); *McGahee v. State*, 133 Ga. App. 964, 966 (3) (213 SE2d 91) (1975) ("A nolle prosequi is a cessation of prosecution for the nonce, but it may spring into life again and be continued again with all of the fervor and energy at the command of the prosecuting officers. A new indictment may be returned or a new accusation may be filed, and the earlier nolle prosequi can in no sense be pleaded as autrefois acquit or former jeopardy, or res judicata.").

[29] *Cf. Pope v. State*, 309 Ga. App. 728, 729 (2) (710 SE2d 911) (2011) (holding that plea in bar was properly denied when, "[b]ecause the trial court did not accept a guilty plea to the dead-docketed Counts 4 and 5 of the Fulton County indictment which alleged the same crimes as the Gwinnett County indictment here, jeopardy did not attach"); *Evans*, 293 Ga. App. at 373 (1) ("[The defendant] argues that being sentenced to anything but drug court would constitute a second sentence on the same

Accordingly, for all these reasons, we affirm the trial court's denial of Ellerbee and Palmer's pleas in bar.

*Judgments affirmed. Self, J., concurs. Ray,  J., concurs in judgment only*.

---

crime and thus constitute double jeopardy. But agreeing to attend drug court is not a 'sentence.' It is a pre-trial intervention contract in which the defendant agrees to attend drug court in exchange for the opportunity to avoid having a conviction on his record."); *Armstrong*, 281 Ga. App. at 298-99 (affirming denial of plea in bar and holding that because superior court lacked jurisdiction to prosecute offense without an indictment or waiver of indictment, subsequent prosecution for that offense in a court of competent jurisdiction was "not barred on the basis of double jeopardy or prior prosecution" because jeopardy had not attached); *State v. Nwobu*, 652 A2d 1209, 1219 (IV) (N.J. 1995) ("[Pretrial intervention (PTI)] closely resembles probation, which has been recognized as a criminal sanction. However, punishment in the form of probation normally follows a finding of guilt. By its nature PTI is designed to furnish rehabilitative services in place of the normal criminal findings of guilt. In any event, we need not resolve whether PTI is a criminal punishment. We are satisfied that because [the defendant] lacked a reasonable expectation of finality in his status when the trial court ordered him into PTI, double-jeopardy provisions do not preclude the State's prosecution of him." (citation omitted)).